UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **MICHELLE CARRIZALES** | **CIV. ACTION NO. 3:22-06087** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **KILOLO KIJAKAZI, ACTING COMMISSIONER, U.S. SOCIAL SECURITY ADMINISTRATION** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

### REPORT AND RECOMMENDATION

Before the court is Plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons assigned below, it is recommended that the decision of the Commissioner be **AFFIRMED**, and this matter **DISMISSED** with prejudice.

### Background & Procedural History

Michelle Carrizales filed the instant applications for Title II Disability Insurance Benefits and Supplemental Security Income payments on April 7, 2020. (Tr. 17, 224-237).[1] Carrizales, who was 44 years old at the time of her most recent administrative hearing, alleged a disability onset date of April 24, 2019 (i.e., the day after the Commissioner's final decision denying her 2017 applications), because of arthritis, diabetes, supraventricular tachycardia, seizures, bilateral carpal tunnel syndrome, degenerative joint disease, an ulcer, a hernia, migraines, and diverticulitis. *See* Tr. 266, 310, 259. The state agency denied the claims initially on February

---

[1] Carrizales filed four sets of prior applications in 2011, 2012, 2015 and 2017. *See* Tr. 65. The 2011 applications were denied initially and not further appealed. *Id*. The remaining applications were denied at the administrative hearing level, with review denied by the Appeals Council. *Id*. The 2017 applications were denied pursuant to an April 23, 2019 ALJ decision. *Id*.

3, 2021, and upon reconsideration on July 14, 2021. (Tr. 59-121, 128-133, 136-151). Thereafter, Carrizales requested and received a January 18, 2022 hearing before an Administrative Law Judge ("ALJ"). (Tr. 39-58). However, in a February 9, 2022, written decision, the ALJ determined that Carrizales was not disabled under the Social Security Act, finding at step five of the sequential evaluation process that she was able to make an adjustment to work that exists in significant numbers in the national economy. (Tr. 14-32).

Carrizales sought review of the adverse decision before the Appeals Council. On September 22, 2022, however, the Appeals Council denied Carrizales's request for review; thus, the ALJ's decision became the final decision of the Commissioner. (Tr. 1-4).

On November 28, 2022, Carrizales filed the instant, pro se complaint for judicial review of the Commissioner's final decision. Following submission of the administrative transcript and supporting memoranda, the matter is now before the court.

## **Standard of Review**

This court's standard of review is (1) whether the final decision is supported by substantial evidence, and (2) whether the Commissioner applied the proper legal standards to evaluate the evidence. *Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021) (citation omitted). The Supreme Court has emphasized that

> [t]he phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Biestek v. Berryhill*, ___ U.S. ___, 139 S.Ct. 1148, 1154 (2019) (internal citations

omitted).

The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

Upon finding substantial evidence, the court may only review whether the Commissioner has applied proper legal standards and conducted the proceedings consistently with the statute and regulations. *Carter v. Heckler*, 712 F.2d 137, 140 (5th Cir. 1983). In other words, where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed – *unless* the Commissioner applied an incorrect legal standard that materially influenced the decision. *See* 42 U.S.C. § 405; *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000); *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

### **Determination of Disability**

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . ." 42 U.S.C. § 423(d)(1)(A). A disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C.§

423(d)(2)(A).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

(1) An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2) An individual will be found not disabled if he or she does not have a "severe impairment," or a combination of impairments that is severe, and of the requisite duration.

(3) An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1], and meets the duration requirement, will be considered disabled without the consideration of vocational factors.

Before proceeding to step four, the Commissioner assesses the individual's residual functional capacity, which is used at both step four and step five to evaluate the claim.

(4) If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

(5) If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy. If the individual can make such an adjustment, then he or she will be found not disabled. If the individual is unable to adjust to other work, then he or she will be found disabled.

*See Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. §§ 404.1520, 416.920.

When a finding of "disabled" or "not disabled" may be made at any step, a decision will be rendered at that point without proceeding to the remaining steps. 20 C.F.R. §§ 404.1520, 416.920; *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). "The claimant bears

the burden of proof on the first four steps, but the Commissioner bears the burden on the fifth step." *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (citation omitted).

## The ALJ's Findings

### I.     Steps One, Two, and Three

The ALJ determined at step one of the sequential evaluation process that the claimant did not engage in substantial gainful activity during the relevant period. (Tr. 19-20). At step two, he found that the claimant suffered severe impairments of degenerative joint disease of the knees, degenerative disc disease, obesity, carpal tunnel syndrome ("CTS"), diabetes, migraine headaches, and bipolar disorder. (Tr. 20-21).[2] He concluded, however, that the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at step three of the process. (Tr. 21-23).

### II.    Residual Functional Capacity

The ALJ next determined that the claimant retained the residual functional capacity ("RFC") to perform a range of sedentary work,[3] except:

> [s]he can frequently, but not constantly, handle and finger. She must avoid exposure

---

[2] The ALJ determined that the claimant's medically determinable impairments of chronic bronchitis, hypertension with a history of supraventricular tachycardia, ovarian cyst, hiatal hernia, and diverticulosis were non-severe. *Id.* Furthermore, her seizure disorder was not a medically determinable impairment at all. *Id.*

[3] Sedentary work entails:

> . . . lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).
.

to noisy environments (that is, be in an environment with no more than a moderate level of noise), vibrations, and dangerous hazards such as unprotected heights and dangerous machinery exposure. [She] is limited to simple work with only occasional interaction with the general public.

(Tr. 23- 30).

### III. Steps Four and Five

With the assistance of a vocational expert ("VE"), the ALJ determined at step four of the sequential evaluation process that the claimant was unable to perform her past relevant work. (Tr. 30-31). Accordingly, he proceeded to step five. At this step, the ALJ determined that the claimant was a younger individual, with at least a high school education. *Id*. Transferability of skills was not material to the decision. *Id*.

The ALJ next observed that, given the claimant's vocational factors, and if she had an RFC that did not include any non-exertional limitations, then the Medical-Vocational Guidelines would direct a finding of not disabled. 20 C.F.R. §§ 404.1569, 416.969; Rule 201.28, Table 1, Appendix 2, Subpart P, Regulations No. 4; Tr. 19-20. However, because the claimant's RFC *did* include non-exertional limitations, the ALJ consulted the VE to determine whether, and to what extent the additional limitations eroded the occupational base for work. *Id*. In response, the VE identified the representative jobs of document preparer, *Dictionary of Occupational Titles* ("DOT") Code # 249.587-018; addresser, DOT # 209.587-010; and surveillance systems monitor, DOT # 379.367-010, that were consistent with the ALJ's RFC and the claimant's vocational profile. (Tr. 31-32, 56-57).[4]

---

[4] The VE responded that for the document preparer, addresser, and surveillance systems monitor jobs there were 17,000, 2,100, and 2,500 positions available nationwide, respectively. (Tr. 56-57). This incidence of work constitutes a significant number (and range) of jobs in the "national economy." 42 U.S.C. § 423(d)(2)(A); *Johnson v. Chater*, 108 F.3d 178, 181 (8th Cir. 1997) (200 jobs at state level and 10,000 nationally, constitute a significant number).

## **Arguments**

Carrizales filed her appeal brief on March 13, 2023, wherein she stated that she has been trying to "get on disability for a while now," without success. (Pl. Brief [doc. # 6]). She explained that, after her last hearing, she had back surgery on February 17, 2022, from which she has yet to fully heal. *Id*. She further noted that she is diabetic, with other medical problems, plus has three minor sons who live with her and help her around the house. *Id*.

Carrizales emphasized that her medication causes her to sleep off and on all day. *Id*. She also questioned how she can work when she is unable to sit or stand for a long period of time. *Id*. Moreover, her treating orthopedist is discussing a possible knee replacement. *Id*. Carrizales also noted that she had a heart condition, "S.V.T." *Id*. She had tried to get a job but was told that they could not hire her so long as she remained under a doctor's care for her back. *Id*.

As of March 7, 2023, Carrizales stated that she was experiencing back pain. *Id*. Her orthopedist mentioned placing something under her skin to help with the pain. *Id*. Her left knee was numb, as were her left leg and foot from the February 17, 2022 back surgery. *Id*. Carrizales said that she experiences difficulty caring for her sons because, most days, she has to lie in bed. *Id*. She also has to use a cane because her knees sometimes give out. *Id*. Furthermore, some days, she has bad migraines and has to be alone. *Id*. She has doctors' appointments that she is unable to attend because she does not have gas or money to pay someone to take her there. *Id*. Finally, she has bipolar disorder, with good days and bad days. *Id*.

Carrizales attached roughly 29-pages of medical records to her brief. [doc. # 6-1]. Most of the records reflect medical appointments that post-date the relevant period, i.e., that

7

occurred after the date of the ALJ's February 9, 2022 decision. However, the records include approximately three visit notes from November 2021 to January 2022 by one of Carrizales's treating orthopedists, Dr. Counts, that document her ongoing back pain. *See* doc. # 6-1, pgs. 4-11.

In her April 20, 2023 reply brief, Carrizales stated that she has been denied by the SSA over twelve times and, at this point, she feels that she has been subjected to discrimination. (Pl. Reply Brief [doc. # 8]). She explained that she has severe back and joint pain, plus migraines, etc., with limited mobility. *Id*. She asked the court to reconsider her disability because she is unable to engage in substantial work activity. *Id*. She added that she had multiple appointments scheduled for the latter part of April with a neurologist, Dr. Counts, a physical therapist, and to obtain a CT scan of her stomach. *Id*. Carrizales attached additional medical records, including ones from Douglas Brown, M.D. and Rolf Morstead, M.D., that also appear in the administrative record, a January 31, 2022 visit note from Mary Wade, FNP, plus others that are dated from August 2022 through January 2023, beyond the relevant period. *See* doc. # 8-1.

## Analysis

Pursuant to the court's scheduling order, Carrizales was required to submit a brief that *inter alia*, set forth "**specific errors** committed at the administrative level which entitle plaintiff to relief." (Dec. 13, 2022 Sched. Order [doc. # 4]). The order cautioned that "[t]he court will consider only those errors **specifically identified** in the briefs. A general allegation that the ALJ's findings are unsupported by substantial evidence, standing alone, is insufficient to invoke the appellate function of the federal court." *Id*.

Upon review, Carrizales has failed to raise any *specific* error with the ALJ's decision. Nonetheless, the keystone of most every social security disability decision is the ALJ's RFC

determination.  Very generously construed, the court may read Carrizales's brief as challenging the ALJ's RFC.

The court, like the ALJ, readily recognizes that Carrizales suffers from multiple impairments that significantly impact her ability to work.  Moreover, the ALJ carefully reviewed the record evidence and listened to Carrizales's testimony before limiting her RFC to a range of sedentary work with additional limitations.  Under the regulations, sedentary work "represents a significantly restricted range of work, and individuals with a maximum sustained work capability limited to sedentary work have *very serious functional limitations*."  (Rule 201.00(h)(4), Table 1, Appendix 2, Subpart P, Regulations No. 4) (emphasis added)).

The court further recognizes that, had the ALJ fully credited Carrizales's testimony and/or the opinion of her treating medical provider Mary L. Wade, FNP,[5] then an even more restricted RFC would have ensued, which likely would have compelled a finding of disability at step five of the sequential evaluation process.  However, the ALJ did not fully credit Carrizales's statements regarding the effects of her impairments.  *See* Tr. 24.  He also found

---

[5] On May 22, 2019, L. Wade, APRN, completed a physical residual functional capacity assessment form indicating that Carrizales could occasionally and frequently lift less than ten pounds, stand and/or walk for less than two hours in an eight-hour workday, must periodically alternate sitting and standing, with a push and/or pull limitation in her lower extremities. (Tr. 372-379).  She occasionally can climb ramps/stairs and balance, but otherwise never climb ladders, kneel, crouch, crawl, or stoop.  *Id*.  Her pain was elevated by motion in her lumbar spine and knees because of degenerative disk disease and arthritis in knees.  *Id*.  Carrizales was unable to take pain relievers with non-inflammatory agents because of her heart condition and fatty liver disease.  *Id*.  Overhead reaching was limited, but handling, fingering, feeling were unlimited.  *Id*.  She had no environmental limitations.
    On an unspecified date, L. Wade completed another physical residual functional capacity assessment form indicating that, in addition to her other limitations, Carrizales had manipulation limitations caused by her carpal tunnel syndrome.  (Tr. 392-399).

FNP Wade's opinion to be of limited persuasiveness because the limitations she recognized were not consistent with her own treatment notes and the record as a whole. (Tr. 29).

Addressing the ALJ's disposition of FNP Wade's opinion first, the court observes that, for claims filed on or after March 27, 2017, the Commissioner no longer affords "controlling weight" to the opinions of treating medical providers and will not defer or give any specific evidentiary weight to any medical opinion(s) from the claimant's medical sources. 20 C.F.R. §§ 404.1520c(a) and 416.920c(a); *see also Webster v. Kijakazi*, 19 F.4th 715, 719 (5th Cir. 2021). Furthermore, the fact that a medical source actually examined the claimant or specializes in an area germane to the claimant's medical issues are not primary or dispositive considerations in assessing the medical opinion. *See* 20 C.F.R. §§ 404.1520c(c) and 416.920c(c). Rather, when determining the persuasiveness of a medical opinion, the most important factors are supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2) and 416.920c(b)(2).

"Supportability" focuses upon how "relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s) . . ." 20 C.F.R. §§ 404.1520c(c)(1) and 416.920c(c)(1). "Consistency" refers to how "consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim . . ." 20 C.F.R. §§ 404.1520c(c)(2) and 416.920c(c)(2).

Only when two or more medical opinions about the same issue are both equally well-supported and consistent with the record, but "not exactly the same," will the Commissioner then articulate how she considered the "other most persuasive factors," such as the medical source's relationship with the claimant (including the length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and the

examining relationship); the medical source's specialization; and other factors (including a medical source's familiarity with other evidence of the claim or an understanding of the agency's disability program's policies and evidentiary requirements). 20 C.F.R. §§ 404.1520c(b)(3)-(c) and 416.920c(b)(3)-(c). Otherwise, the Commissioner, may, but is not required to explain these additional factors. 20 C.F.R. §§ 404.1520c(b)(2) and 416.920c(b)(2).

As noted above, the ALJ cited specific instances in Carrizales's treatment record that reflected normal musculoskeletal function, gait, stance, and strength (including grip strength). (Tr. 29). Carrizales also exhibited good back and musculoskeletal motion, with no consistent signs of difficulties with sitting. *Id*. The ALJ further noted Carrizales's activities of daily living, including her ability to do some household chores like laundry, cleaning, driving, preparing meals, and tending to her children. *Id*. In short, the undersigned finds that the ALJ provided good cause to discount FNP Wade's medical source statements.[6]

The ALJ also determined that the opinions of the two non-examining agency physicians[7]

---

[6] *See Ward v. Barnhart,* 192 Fed. App'x. 305, 308 (5th Cir. 2006) *Nugent v. Astrue,* 278 Fed. App'x. 423, 426 (5th Cir. 2008) (conflicting medical evidence supported ALJ's decision to place little weight on physician's opinion); *Richard ex rel. Z.N.F. v. Astrue*, 480 Fed. App'x. 773, 779 (5th Cir. 2012) (ALJ may discredit physician's opinion by pointing to contrary evidence, albeit however tersely); *Garth v. Astrue*, 393 F. App'x. 196, 199 (5th Cir. 2010) (court noted that ALJ *could have* discounted treating physician's opinion because the opinion contradicted his own treatment notes and the claimant's admissions); *Vansa v. Astrue*, 423 F. App'x 381, 383 (5th Cir. 2011) (upholding ALJ's decision to discount treating physician's opinion because, as the ALJ explained, it was "not supported by the objective findings of his own clinic notes nor by the evidence as a whole."); *Webster v. Kijakazi*, 19 F.4th 715 (5th Cir. 2021) (ALJ considered both the consistency and supportability of the physician's testimony, but ultimately determined that physician's testimony was only "supported" by his own findings and was inconsistent with the claimant's medical history and longitudinal psychiatric treatment records); *Daigle v. Kijakazi*, No. 22-30721, 2023 WL 4501865 (5th Cir. July 12, 2023) (ALJ made credible choice finding physician's opinion unpersuasive in light of multiple other pieces of medical evidence).

[7] On September 14, 2020, non-examining agency physician, Charles Gruenwald, M.D., reviewed the record and opined that Carrizales was capable of work at the light exertional level, limited by

11

were of limited persuasiveness. (Tr. 28-29). Although both non-examining agency physicians opined that Carrizales was capable of work at the *light* exertional level, the ALJ cited portions of Carrizales's medical record to find that it was more appropriate to limit her to *sedentary* level work. (Tr. 28). Of course, this reduction of exertional capacity inures to Carrizales's benefit.

In addition, the ALJ took issue with the severity of some of the postural and environmental limitations imposed by the non-examining physicians, for which he provided citations to contrary evidence. (Tr. 28-29). While one may quibble with the ALJ's decision to reduce or omit the postural and/or environmental limitations endorsed by the non-examining physicians, those limitations ultimately are not material to the decision. Non-exertional impairments that do not significantly impact the occupational base for sedentary work do not undermine the Commissioner' Step Five determination. *See*, *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987) (citations omitted) (when a claimant's non-exertional impairments do not significantly affect her residual functional capacity, the ALJ may rely exclusively on the Guidelines); *see also*, *Crowley v. Apfel*, 197 F.3d 194, 199 (5th Cir. 1999); *Selders v. Sullivan*, 914 F.2d 614, 618-619 (5th Cir. 1990).

Here, even if Carrizales *were* limited in her ability to perform postural activities such as

---

the ability to only frequently climb ramps/stairs, occasionally climb ladders/scaffolds, frequently balance, occasionally kneel and crawl, frequently crouch, with the need to avoid concentrated exposure to extreme heat, humidity, vibration, and hazardous machinery. (Tr. 74-77). Despite reports of bilateral CTS, Gruenwald found that she had no manipulative limitations. *Id*. He noted that she was able to drive and talk on the phone and text. *Id*. She also shopped in stores for up to three hours at a time. *Id*.
 On May 5, 2021, non-examining agency physician, Jeffrey Faludi, M.D., reviewed the record and issued an RFC for work at the light exertional level, with the need to avoid even moderate exposure to noise, plus vibrations and concentrated exposure to extreme heat, humidity, fumes, and hazardous machinery. (Tr. 106-107).

12

climbing ladders, ropes, or scaffolds; balancing; kneeling; crouching; or crawling, such limitations would not significantly erode the occupational base for the full range of sedentary work. *See* TITLES II & XVI: DETERMINING CAPABILITY TO DO OTHER WORK-IMPLICATIONS OF A RESIDUAL FUNCTIONAL CAPACITY FOR LESS THAN A FULL RANGE OF SEDENTARY WORK, ("SSR 96-9P") (July 2, 1996). Furthermore, "few occupations in the unskilled sedentary occupational base require work in environments with extreme cold, extreme heat, wetness, humidity, vibration, or unusual hazards." *Id*. In fact, none of the jobs identified by the VE require any balancing, stooping, kneeling, crouching, crawling, or exposure to environmental conditions. *See* DOT # 249.587-018, 1991 WL 672349; DOT # 379.367-010, 1991 WL 673244; and DOT # 209.587-010, 1991 WL 671797. Moreover, the surveillance systems monitor job does not entail any handling or fingering. *Id*. In short, to the extent that Carrizales might have argued that the ALJ erred by declining to endorse certain non-exertional limitations, such error was harmless.[8]

In her brief, as at the hearing, Carrizales asserted that she remains unable to sit or stand for extended periods, has back and leg pain, S.V.T, uses a cane, and has migraines. However, the non-examining agency physicians did not assign any sitting or standing limitations that were incompatible with at least sedentary work. *See* discussion, *supra*. Moreover, Carrizales admitted to the consultative psychologist that she did not use her cane on a daily basis. (Tr. 1072). As for her migraines, Carrizales only experiences them about twice per month, and they last but 30 minutes to an hour. (Tr. 48-49). There is no indication that this frequency or

---

[8] Procedural improprieties "constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision." *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988). Those circumstances are not present here.

duration would impact her ability to work, especially where the ALJ limited her RFC to exclude more than moderate noise. Furthermore, Carrizales does not describe any work limitations associated with her supraventricular tachycardia, i.e., "S.V.T.," that are not subsumed within an RFC for work at the sedentary exertional level. *See* Tr. 20.

As for Carrizales's bipolar disorder, both non-examining agency psychologists found that she had no medically determinable mental impairment at all because of her failure to cooperate with the initial consultative examination. *See* Tr. 72-73, 105. Indeed, following his January 11, 2021 psychological examination, David Williams, Ph.D., diagnosed Carrizales as malingering. (Tr. 950-955).

Nonetheless, on June 19, 2021, Carrizales underwent a second, consultative examination with Tamara Jones-Thompson, who found that, overall, Carrizales was capable of minimal to moderate level of work activity. (Tr. 1067-1072). The ALJ, however, deemed Jones-Thompson's opinion unpersuasive because it was vague and failed to specify any specific work restrictions in vocationally relevant terms. (Tr. 30). He also stated that the report was internally inconsistent and not supported by the record, as a whole. *Id*. In any event, the ALJ limited Carrizales to simple work, which reasonably incorporates a moderate or even *marked* limitation in concentration, persistence, or pace. *Reid v. Astrue*, Civil Action No. 10-0237, 2011 WL 4101302 (S.D. Miss. Aug. 15, 2011) *report and recommendation adopted,* 2011 WL 4101277 (S.D. Miss. Sept. 8, 2011); *Madrid v. Colvin*, Civil Action No. 12-800, 2013 WL 6641305 (N.D. Tex. Dec. 17, 2013); *Cornejo v. Colvin*, Civil Action No. 11-470, 2013 WL 2539710 (W.D. Tex. June 7, 2013). Furthermore, Carrizales admitted at the hearing that she has no difficulty getting along with other people or with making judgments. (Tr. 51). She also admitted that she handles stress well. (Tr. 328).

Turning to Carrizales's subjective description of her symptoms, the court notes that the ALJ is required to consider all symptoms, including pain, and the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence, together with other evidence. 20 C.F.R. § 404.1529(a).[9] In evaluating the intensity of symptoms, including pain, the ALJ will consider all available evidence such as medical history, medical signs and laboratory findings, and statements about how the symptoms affect the claimant. *Id*. The ALJ also must consider inconsistencies in the evidence and conflicts between the claimant's statements and the remainder of the evidence. 20 C.F.R. § 404.1529(c)(4). However, the ALJ need not follow formalistic rules in her assessment. *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994).

Relatedly, pain is considered disabling under the Social Security Act only when it is "constant, unremitting, and wholly unresponsive to therapeutic treatment." *Selders v. Sullivan*, 914 F.2d 614, 618-619 (5th Cir. 1990). The ALJ's decision regarding the actual extent of plaintiff's complaints of pain is entitled to considerable judicial deference if supported by substantial evidence. *James v. Bowen*, 793 F.2d 702, 706 (5th Cir. 1986); *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991). Factors that the ALJ may consider in evaluating the claimant's subjective complaints include: (1) claimant's daily activities; *Falco v. Shalala*, 27 F.3d 160 (5th Cir. 1994); *Anthony v. Sullivan*, 954 F.2d 289, 296 (5th Cir. 1992); *Reyes v. Sullivan*, 915 F.2d, 151, 155 (5th Cir. 1990); (2) medication the claimant takes for pain; *Anthony v. Sullivan, supra; Villa v. Sullivan,* 895 F.2d 1019, 1024 (5th Cir. 1990); (3) degree of medical treatment; *Villa,*

---

[9] Previously, this would have characterized as the ALJ's credibility determination. However, in 2016-2017, the Commissioner issued a new social security ruling that dispensed with the term "credibility" because it was not used in the regulations. See SOC. SEC. RULING 16-3P TITLES II & XVI: EVALUATION OF SYMPTOMS IN DISABILITY CLAIMS, SSR 16-3P (OCT. 25, 2017).

*supra*; *Nickerson v. Secretary of Health and Human Services*, 894 F. Supp. 279 (E.D. Tex. 8/3/1995); (4) lack of medical opinions in the record indicating the claimant is precluded from performing the level of activity indicated by the ALJ; *Villa, supra;* and (5) external manifestations of debilitating pain such as marked weight loss. *Falco, supra*; *see also* 20 C.F.R.§§ 404.1529(c)(3)(i)-(vii).

The ALJ complied with the foregoing requirements in this case. He dutifully recounted the hearing testimony provided by plaintiff. (Tr. 23-28). Ultimately, however, he determined that Carrizales's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence of record. (Tr. 24). For example, he noted Carrizales's inconsistency regarding her need for a cane. (Tr. 24). Moreover, she also did not undergo regular physical therapy for her manipulative limitations or require CTS release surgery. (Tr. 24-25). She even displayed normal grip strength and sensation upon examination. *Id*. The ALJ also noted Carrizales's history of medication non-compliance. (Tr. 26). Moreover, she was discharged from physical therapy for non-compliance. (Tr. 629). In addition, Dr. Williams opined that she was malingering. (Tr. 955).

The ALJ further emphasized that Carrizales continued to work, albeit at a part-time level, i.e., 15-20 hours per week, up until one-month before the January 18, 2022 hearing. (Tr. 53-54). While Carrizales's part-time work did not represent substantial gainful activity as contemplated under step one of the sequential evaluation process, it does tend to show that she is capable of working to some extent, without the need to regularly lie down.

For these reasons, the court finds that the ALJ's assessment of Carrizales's subjective complaints and symptoms satisfied the requirements of 20 C.F.R. § 404.1529, and is supported

by substantial evidence. *See Giles v. Astrue*, 433 Fed. App'x. 241, 249 (5th Cir. 2011) (ALJ's appraisal of plaintiff's subjective complaints is supported by his discussion of medical records and opinions); *Herrera v. Comm'r of Soc. Sec.*, 406 Fed. App'x. 899, 905–06 (5th Cir. 2010) (ALJ complied with SSR 96-7p [now SSR 16-3p] by thorough consideration and discussion of the relevant medical evidence); *Undheim v. Barnhart*, 214 Fed. App'x. 448 (5th Cir. 2007) (opinion as a whole gave sufficient reasons and documentation for the ALJ's resolution of subjective evidence); *Cornett v. Astrue*, 261 Fed. App'x. 644 (5th Cir. 2008) (ALJ gave some weight to claimant's complaints; thus claimant's arguments that his subjective complaints were not given enough weight is unavailing); *Hernandez v. Astrue*, 278 Fed. App'x. 333 (5th Cir. 2008) (despite claimant's subjective allegations of pain, the ALJ gave "greatest weight" to treating physician's opinion).

Carrizales further complains that she underwent back surgery after the ALJ's decision and still has not been released to return to work. In support of her argument, she attached additional treatment records that were not before the ALJ and that post-date the Commissioner's final decision in this matter. At best, the court could remand the matter to the Commissioner for consideration of Carrizales's new evidence. However, the court may order additional evidence to be taken before the Commissioner "only upon a showing that there is new evidence which is material and there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Pierre v. Sullivan,* 884 F.2d 799, 803 (5th Cir. 1989) (citing, 42 U.S.C. § 405(g)). To justify remand, the evidence must be "new," and not merely cumulative of what is already in the record. *Id.* (citation omitted). The evidence also must be "material"; *i.e.*, relevant, probative, and likely to have changed the outcome of the Commissioner's determination. *Id.* Finally, the claimant must demonstrate good cause for not having

17

incorporated the new evidence into the administrative record. *Id.*

Carrizales's new medical records do not satisfy the foregoing criteria. There is no indication that the treatment records reflect Carrizales's impairments during the relevant period, i.e., as of the date of the ALJ's February 9, 2022 written decision, as opposed to a "later-acquired disability or . . . the subsequent deterioration of the previously non-disabling condition." *Haywood v. Sullivan*, 888 F.2d 1463, 1471-1472 (5th Cir. 1989) (quoting *Johnson v. Heckler*, 767 F.2d 180, 183 (5th Cir.1985) (internal quotation marks omitted)).[10] For those records that pre-date the ALJ's decision, they appear to be no more than cumulative, and, thus, immaterial.

Carrizales also has not suggested any explanation for her failure to incorporate the "new" evidence into the medical record. *Pierre, supra* (good cause for remand is not met unless plaintiff provides proper explanation to excuse his failure to submit the evidence earlier). "[T]he mere fact that a medical report is of recent origin is not enough to meet the good cause requirement." *Pierre*, 884 F.2d at 803 (citation omitted).

In sum, Carrizales has neither established that the post-decision evidence is material, nor demonstrated good cause for her failure to incorporate the evidence into the administrative record. *Pierre, supra*. Accordingly, Carrizales is not entitled to remand. *Id*.

Finally, Carrizales stated that she felt like she was being subjected to discrimination. However, a civil rights action against the United States is barred by sovereign immunity. *Affiliated Prof'l Home Health Care Agency v. Shalala*, 164 F.3d 282, 286 (5th Cir. 1999) (citations omitted). Furthermore, insofar as Carrizales intended to assert an equal protection claim, she has failed to allege that her membership in a protected class caused the alleged

---

[10] Of course, as the Appeals Council pointed out, the evidence that post-dates the relevant period may support a new disability application(s). *See* Tr. 2. As evidenced by her many prior applications, Carrizales is well-acquainted with the application process.

discrimination or that she was treated differently from other similarly situated persons for no rational reason. *Fraser v. Comm'r of Soc. Sec.*, No. 16-0939, 2016 WL 5875018, at *3 (N.D. Tex. Sept. 9, 2016), *R&R adopted,* (N.D. Tex. Oct. 6, 2016). Accordingly, her bare claim of discrimination fails.

## Conclusion

The ALJ in this case was tasked with determining whether the claimant was disabled. In so doing, he considered the hearing testimony, the medical records, and expert opinion evidence. The evidence was not necessarily uniform, and according to Plaintiff, should have compelled a different result. However, conflicts in the evidence are for the Commissioner to resolve. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990) (citation omitted); *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971) (citation omitted).

No matter how sympathetic the court may be to Plaintiff's situation, she still is obliged to establish that she is disabled *within the meaning of* the Social Security Act. The court emphasizes that it is not at liberty to "reweigh the evidence in the record, try the issues de novo, or substitute its judgment for the Commissioner's, *even if the evidence weighs against the Commissioner's decision*." *Newton, supra* (emphasis added). The limited two-pronged issue before the court is whether the Commissioner's determination that Plaintiff was not disabled under the Social Security Act is supported by substantial evidence and free of legal error. Upon review of the (limited) arguments presented, the court is satisfied that the Commissioner's decision comports with the foregoing standard. Accordingly,

IT IS RECOMMENDED that the Commissioner's decision be AFFIRMED, in its entirety, and that this civil action be DISMISSED with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FRCP Rule 72(b), the parties have

**fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before a final ruling issues.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, on this 4th day of October, 2023.

KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE